2-4-3116, Niki Frenchko v. Paul Monroe. 15 minutes for the appellee and 15 minutes to be shared between the appellants. Mr. Downey, you may proceed for Mr. Monroe. Good morning. Good morning, your honors. May it please the court, my name is Dan Downey. I'm here on behalf of Commissioners Fuda and Cantalamesa and Sheriff Monroe. And I will speak for six minutes, reserving three minutes for Mr. Yasowitz will speak for six minutes on behalf of his clients, Sergeant Ross and Sergeant Wicks. If I may, your honor, this case does present a unique application of the law. We have a situation where a county commissioner admittedly disrupted a meeting and did so in a manner that resulted in her arrest. We would submit to the court that the trial court erred when they determined that there was no probable cause for the arrest of Ms. Frenchko. The analysis done suggests that, yes, she was disruptive. I think the court indicated that as well. I think it's admitted in the brief filed by Ms. Frenchko. And at the same time, the court determined, well, we can't disentangle her conduct from her speech. I would suggest to the court that this is a misapplication of the law. In reality, Ms. Frenchko, at least four different times, interrupted the reading of a letter that was sent by Sheriff Monroe to the commissioners and the decision was made by Commissioner Fuda to read that letter into the record of a public meeting. This letter was essentially an exercise by Commissioner Fuda, under the First Amendment, to respond to something that Ms. Frenchko had said at a prior meeting. Now, this is appropriate to do that. At the meeting, it was an appropriate forum to do that. Unfortunately, Commissioner Frenchko chose not only to interrupt numerous times, uttering words such as, no, no, that's not true, or suggesting that the sheriff hadn't responded to a request for policies, then correcting that at a later point. There is also evidence of Commissioner Frenchko essentially bullying the clerk who was reading this document. This video is a matter of evidence for the court to be reviewed. And upon looking at that video, it strikes me as very difficult to suggest that Commissioner Frenchko was interested in publishing something under the First Amendment rather than disrupting the meeting. And so I would submit to the court that, in fact, what Commissioner Frenchko did... I mean, there's a couple of things going on. One, it seems obvious that your clients did not like the plaintiff and didn't agree with her views, which is, and she is expressing views and had expressed certain views, which I think implicates the First Amendment. This is public policy, it's a public meeting. But I think the real question is, there was testimony, my recollection is there's testimony that people had been disruptive at meetings before, and they don't get arrested. And so this raises kind of the Wasman or the Nieves kind of exception. Like, hey, if people aren't getting arrested for being disruptive, even though you could be arrested for it, it's a First Amendment issue. Maybe you could address that. Yes, Your Honor, and thank you. And so the Nieves case wasn't addressed at the lower court level, and it wasn't briefed by opposing counsel, and we would argue that that case has no application to the facts of this one. But at the same time, we would note that there's been no analysis regarding similarly situated individuals at prior meetings. Yes, we would indicate from the record that meetings sometimes went off the rails in Trammell County, Ohio. And yes, the court is correct that Commissioner Fuda and Commissioner Cantalabesa were clearly frustrated with Commissioner Frenchko, and were frustrated that day, were frustrated before and after that day. Well, and there's, and nobody's ever been, nobody's ever been arrested for disrupting a meeting, is that right? Well, or Ross couldn't remember, or somebody, Monroe, I don't, I can't remember, I can't get all the names straight, but, but there was testimony, I think, that no, we don't remember anybody ever being arrested for this kind of behavior. And it gets pretty rowdy, it seems like, at these meetings. So I, I don't know, I'm not sure why is it this time somebody gets arrested? Well, I would submit to the court that yes, there's testimony of the case that people have been removed from meetings previous to this one, and I would indicate yes, I'm aware of no one being arrested at Commissioner's meeting prior to this one. I would also note that this meeting, which is what's before the court, was clearly something that was outrageous and beyond what we had seen prior meetings. There's no evidence in the record regarding specific meetings and how people have acted prior to this, other than nobody had been arrested before. But with this particular meeting, there are some facts that I think weigh into the analysis. Sergeant Wicks, for instance, he did not customarily attend Commissioner's meetings in his capacity as a sergeant. He was there that day, called in I think at 1030 that morning to attend, and what he observes is what really matters. The commissioners, I think Wicks, or excuse me, Commissioner Cato Mesa and Commissioner Fuda, did not ask for Commissioner Fresco to be arrested. We maintain, as... Well, isn't there, I mean, don't your clients also have a spoliation, isn't there a spoliation issue about who, I mean, there were text messages that were deleted, right? And we don't know what they say. Well, I think we do have text messages from Commissioner Cato Mesa. But aren't there, isn't there some, isn't there a spoliation issue? I know the district court didn't, because the district court granted summary judgment, didn't go into the, to the prejudice part of it, but I thought there were some, so there is a spoliation issue, is that right? I would suggest to the court that the spoliation allegation really isn't relevant to what is before this court for review. I would argue that the video actually captures the arrest and the probable cause. I would also note that the record is clear with respect to the text messages that none of the defendants in this case texted to one another regarding the incident that occurred that day in real time. I think text messages that were uncovered show that Commissioner Cato Mesa, for instance, texted Sheriff Monroe, I think on August 7th, a month after this incident, that, worse the effect of, this story about the jail is ridiculous, or worse the effect, I'm paraphrasing. But that is not something that would somehow remove probable cause for the arrest, or the fact that the commissioners themselves did not ask for Ms. Trunchko to be arrested. They did not ask for her to be removed. The only thing that I think Commissioner Cato Mesa said, and it's a good point because the lower court did not individually analyze what each perceived litigant did under civil rights analysis. Sheriff Monroe wasn't there. He had no idea that she was being arrested in real time. Commissioner Cato Mesa simply said, worse the effect of, you're disrupting a public meeting which has been admitted by Ms. Trunchko and is a matter of record of the case. And the testimony is that Commissioner Fuda said nothing. I know you're out of the meeting. I can't remember his name at the moment. Made a gesture to the two officers and only then did they proceed with the arrest. In other words, she was arrested pursuant to instruction rather than the officers own observations? I would say that the record, at least indicated by the trial court judge, was that one of the officers directed a thumbs up in the direction of the Board of County Commissioners, but there is absolutely no testimony or evidence of the case that that meant anything to Commissioner Fuda or to Commissioner Cato Mesa. So that's what I believe is in the record of the case, Your Honor. All right, thank you. May it please the Court, my name is Andrew Yasowitz. I represent Sergeants Wicks and Ross in this case. Can you perhaps start off with the retaliation claim and the evidence that Ms. Trunchko has offered concerning whether or not there's been a prior arrest for this type of conduct at a meeting? Well, so speaking on behalf of Sergeants Wicks and Ross, Sergeant Wicks never even attended a meeting before, as Mr. Downey said. He didn't even know he was going to be at this meeting. Well, that's not what I'm asking. I'm asking about whether or not there has been an arrest for this type of behavior before, because that's what her burden would be, to come forward with some evidence that, well, even if there's probable cause, this doesn't typically happen. There's nothing in the record about a prior arrest. Well, Monroe testified, Sheriff Monroe testified... About removals. It had not happened before. I think he testified that there have been removals. Right, but he wasn't aware of an arrest, correct? That's what I recall. If I'm misremembering the testimony, you can just tell me. No, I understand. So, but for the retaliation claim, there's two pathways, right? There's, okay, no probable cause opens the door to a potential First Amendment claim. That's the pathway the district court chose. The district court found that there was no probable cause, and then there's the second pathway. If there is, so your question assumes that there is probable cause, all right, which would then dispose of the Fourth Amendment claim, if there is probable cause. So the second pathway is there is probable cause, but there's comparator evidence, and similarly situated people haven't been arrested. Now, that doesn't establish your retaliation claim. That just opens the door. You still have to prove that each defendant acted with retaliatory intent, the Mount Healthy framework. You still have to go through that. The district court never analyzed, and I'll call it the Nieves exception. Why shouldn't we remand for that? Well, and that would be, and that's one of the things we put in our brief. If you're going to, then the district court should look at that in the first instance. It shouldn't be up to this court to analyze that in the first instance for Sargent Wicks and Ross, right? There's no evidence in the record that they arrested Ms. Frenchco because they were upset on the content of her speech, rather than a genuinely held belief that she violated the statute. On the video, Wicks says, Sargent Wicks says, you're being arrested because you're being disruptive. That's at 47 minutes to 47 minutes. To Clay's question about the thumbs up or the, you know, the wink and nod or whatever. I mean, I take it the argument is, well, these officers, so nobody's ever been arrested before, but these commissioners want to retaliate and they need to use these officers to, they can't arrest somebody, they need the officers to do it. So they're in cahoots and they direct the officers to arrest her where nobody else has ever been arrested before. Okay, well, let's take that. So, first of all, on the thumbs up, that was something that just... By the way, that's why I was asking about the spoliation, because if that were, if there's a question about whether people conspired with each other to effectuate a retaliatory arrest, then you would want to have all of the information, all of the communications between all of the parties, right? Any spoliation would be a problem in that situation. All right, well, let's hit the thumbs up first and then I'll hit the spoliation. There's no testimony in the record about the thumbs up. Nobody here noticed it. The district court noticed it and put it in its opinion. There's nothing in any deposition that I recall about the thumbs up. But what... The question to the thumbs up, though, wasn't, didn't Commissioner Futa, and so maybe I should have asked this of... He said Wicks. Yes, he said Wicks. And I know Wicks said he didn't hear that. That's at the point where, you know, she's already interrupted and now she's back on the dice and she's starting to talk about something completely unrelated about children's services. Let's assume, I mean, we'll give them the inference that the commissioners are asking for law enforcement assistance. Okay, so what? That's not a... That doesn't make a conspiracy. As we put in our brief, you know, this court's decided that asking for police assistance doesn't make you a conspirator with the police. That's Dressler versus Rice. Spoliation. I don't want to forget your question. Spoliation. The district court didn't impose any spoliation sanctions, so it's not an issue that's really before this court. I know you guys keep saying that. Look, I'm saying that the district court granted judgment and said, look, I don't really have to deal with the spoliation because I'm already granting judgment. So I don't have to go into the details of what was spoliated and what the prejudice might be. But I'm saying your argument hinges on us shouldn't have granted judgment. But if it gets remanded, or if the district court is looking at this Nieves question, or Wassman, or whatever it is, then the spoliation becomes relevant again, right? Do we agree with that? I guess that would be up to the district court. What I know is that there's text messages in the record, Doc 56, record entry 56. You're saying nothing was deleted? Is that your position? I'm not saying nothing was deleted. I mean, I'm saying, okay, great, there are text messages in the record, but was there anything deleted? My understanding is there was stuff deleted. I mean, I don't know what it is. I don't know if it's significant. I just know that, I mean, it's kind of shady. People are destroying evidence, right? Usually you get an adverse inference, or you get an instruction, or I don't know. Especially in a case where there's an allegation that people were in cahoots with each other and would be probably texting in order to effectuate that. Two points on that, if you'll allow me to answer that question. We know who texted who and when, right? That's in the record. That's 56. We know that there were no texts between Sergeant Ross and any other defendant, or Sergeant Wicks and any other defendant, except texts between themselves a month beforehand. So what was spoliated? We know that there's no texts between these alleged conspirators at any time around this incident. And then they didn't put in any telephone data into the record. They could have done that, but they didn't. And lastly, there was one other point, but I can't remember what it was. I can't remember what it was, and I'm out of time. All right. Okay, thank you. Morning, Your Honors. May it please the Court, my name is Matt Miller-Novak. I'm here on behalf of appellee Nikki Frenchko. Your Honors, I think the record establishes two things. Number one, there was no probable cause to arrest Nikki Frenchko that day, and number two, that her arrest was- The way I read the opinion is, the judge said there's no probable cause because the arrest was motivated by retaliatory, kind of First Amendment retaliation motive on the part of the defendants. In other words, it doesn't seem to me that the district court kind of independently examined, was there probable cause for disrupting a meeting under Ohio law? And then, if there was probable cause, was it retaliation? Was it nievis? Was it a policy under Wassmann? In other words, don't you need to separate those two analyses? Because it seems to me that the probable cause to disrupt a meeting, I mean, it does look like there's a disruption by your client of the meeting, and there would be probable cause putting aside any First Amendment concern, but it seems like the district court kind of pushed those together. I don't think so, Your Honor, and the reason for that is, is because I think what the district court pointed out, that it was actually the protected speech itself which motivated the arrest, and that the protected speech cannot cause an arrest. And I would actually disagree that there is a disruption, and that's where I firmly disagree with my friends on the other side of the V. And here's why. I think you cannot ignore context. Because anytime we're talking about the Fourth Amendment, we're talking about probable cause, we're talking about a totality of the circumstances. And what the appellants want to do, and what they've vigorously attempted to do, is to analyze this whole situation in a microcosm of time that removes the context of these meetings. And I think that's very important, because when we talk about public meetings themselves, we talk about limited, a limited public forum. Okay, but you have two officers, Wicks and Ross. Yes. You're saying those guys saw her and said, we disagree vehemently with what she's saying, and we're going to arrest her. I mean, where's the evidence of that? I don't, maybe, maybe if they were doing, maybe if Commissioner Fudo or something had said to those two, hey, you know, she's bad for the police department. We need to, you know, we need to get her. Sheriff Monroe wants her arrested. Okay, maybe. But looking at these two officers in a vacuum, I don't see anything in the record that says, oh yeah, we disagreed with what she was saying. That's why we got up and arrested her. Well, they destroy that evidence, Your Honor. And here's why I think we can look at the totality of the circumstances to draw that inference. Ms. Frenchko, during this time period of a month, the meeting before as well as the day of, was engaged in criticism of the entire Sheriff's Department, how they handled inmate care at the county jail. She was on a campaign of criticism against lawsuits that had been filed. Were Wicks and Ross at these prior meetings where this was happening? They were part of the county, and that's the thing, Your Honor. Well, no, but in terms of whether or not these two officers had probable cause, when you say the totality of the circumstances, are those totality of the circumstances that actually apply to these two officers? Yes, Your Honor. How so? I mean, were they present? The text messages that they destroyed were actually sent. We know that from deposition. The text messages that they destroyed. So Ross is vigorously text messaging before the arrest. The people that he is text messaging are other deputies, and some of them are even jail employees. The same people that Commissioner Frenchko is criticizing in the time leading up to her arrest. We know that Sheriff Monroe is actually texting the same news station that would report on her arrest within 20 minutes thereafter. This was a planned public moment of speech confronting Commissioner Frenchko for her speech at her previous meeting. It was a letter. Ross admits, Your Honor, that he was at previous meetings. He admits that he knew that those meetings were constantly chaotic, and there was constant interruptions. I won't say that all is true, but where's the evidence that the motivation against your client was primarily based upon prior events? In other words, it's not disputed that your client disrupted the meeting, and it's not disputed that the disruptions were of some length and time, and that the meeting deteriorated to the point that it couldn't move forward. So that would suggest that there was a probable cause for the arrest based on the disruptive behavior, and if that occurred, the issue about the content of your client's speech and what the issue that she was concerned about does not determine the issue. If the meeting was disruptive, there was probable cause for the arrest based upon that. This seems less of a First Amendment issue than your comments would suggest. Your Honor, Wicks admitted in his, I can answer that in a few ways, Wicks admitted in his deposition that he determined the meeting was disruptive because the Commissioner said it was disruptive. I cited that deposition testimony specifically in my brief. He admitted he made that determination because of accusations of disruption that came from the Commissioner's table, number one. Number two, again, I think you do have to... Well, why is that important if the judicial officer has to determine if there was, in fact, disruption to the point that there was probable cause for the arrest? Then who else had an opinion or observed this, that, and the other thing? It's less important than the meeting was disruptive and there was probable cause for the arrest. Your Honor, I think it ultimately comes down... Well, I think it's two-pronged here. I think that the context does matter, and I have to point out every previous meeting before and actually every subsequent meeting after. If interruptions and over-talking one another and boorish behavior and arguments and shouting matches are considered disruptive behavior in a Trumbull County Commissioner's meeting, you'd have to park a paddy wagon outside of it every single meeting because that was the normal course of conduct. Does that go with the Avis argument? It does, Your Honor. It doesn't go to the probable cause to arrest under Ohio law for disrupting a meeting. If she's interrupting the clerk and intimidating the clerk while she's trying to read this letter and the Commissioner is saying, you're out of order, or whatever it is, and eventually she gets arrested for disrupting a meeting, the question is, in a vacuum, was that... It may be that people should be arrested at every single meeting. I don't know what's going on in this county, but it sounds like, yeah, okay, maybe people need to be getting arrested all the time. But that's a separate question, right? That's the Nieves question. That's the, hey, the one time you picked me because you didn't like my speech. But that doesn't mean there wasn't a probable cause to arrest her, right? That's what I'm saying. Aren't they completely separate questions? Yes and no, Your Honor. I agree that there is a separate question that deals with the Nieves as well as the Gonzales standard. The pretext issue. But I think context matters. And I'll just give an example. It's one of those kind of stereotypical things where we say that screaming fire in a movie because context matters. Because at that point, you're just warning something. It's the same statement in the same place, but the context of the thing changes it. Because what we have in a limited public forum, which is what a public meeting is under Eisen versus Madison in many cases, you have what are called time, place, and manner restrictions that can be created, and they can be formed, and they can be applied so long as they don't discriminate against viewpoints. In Trumbull County, they didn't use any time, place, manner restrictions. These meetings were always chaotic. So the behavior in this meeting wasn't any different than any meeting that preceded it. What we know from the record is we have salsa dancing in these meetings. We have people interrupting them constantly. We have Canto La Mesa. We have FUDA doing disgusting things like holding up used pictures of used tampons of my client. I hate to interrupt you, but doesn't this still go to the Nieves question of whether, I mean, this is, I mean, that's like saying people jaywalk all the time out here on Walnut. They do it. Police officers never, ever bother them. But the day that I jaywalked, I yelled out something, and they stopped me. Well, that's a First Amendment issue. That's not whether or not there was probable cause to believe that I jaywalked, because I walked across the middle of the street, right? Right. So I don't, I feel like your argument is circular and always goes back to, hey, this ordinarily doesn't happen, because these meetings are, we'll say interesting all the time. They're interesting all the time, but these officers don't arrest for the other interesting activities that occur. Right. I mean, we do have that evidence. It's tough, Your Honor, because I think it's hard to always, constitutional law in and of itself, I think we all agree, is something that it is kind of somewhat, it morphs over time. And you look at totalities of circumstances, and sometimes it's not a square peg fits square hole every single time. In this case, I think it is somewhat circular, because I actually have a hard time mentally separating the relationship between the First and the Fourth Amendment in this case, because ultimately, her conduct was speech, right? It's not like she threw something that was purely a physical action. Everything that we're talking about does involve words. I will agree to you, with you very much, that there is a heavy Nieves standard here. And they were not accurate when they argued a little bit ago that we did not brief that in the lower court. I most certainly did brief Nieves v. Bartlett. And I most certainly briefed Lozman. And in this court, I most certainly briefed those two, as well as, I think, Lozman and Gonzales, which was decided after the And what we have here is a unicorn. And that is very, very, very relative to the Nieves and Gonzales standard, because Nikki Frenchka was undoubtedly treated different than every other human being that ever allegedly disrupted a meeting in Trumbull County. And the one thing we can't forget is there was a window of time. She was arrested. It's not like they walked her to the Justice Center, Your Honor. What happened was they took her back to the sheriff's station. The sheriff reviewed the information, the videos. He made a tagline to the press. And he allowed the charges to get filed to punish the speech. And the reason he provided was not because she interrupted the meeting. The reason he provided was because she allegedly, quote, unquote, emotionally abused the clerk. I'm going to cite this court in Eisen v. Madison, which is actually a case I argued in front of it with Professor Kinsley. And this court determined that in board meetings, abusive speech is a protected viewpoint. Counsel, you keep saying that context matters. And I actually agree with you. In support of that, you mentioned that the meetings are chaotic. Lots of people interrupt and do and say inappropriate things. Well, a lot of those disruptions and chaotic meetings occur in the context of multiple people being disruptive. And there's so much disruption that virtually all the preside of the meeting could do might be to cancel the entire meeting. Or various people are disruptive at various points in time. But perhaps the disruption doesn't go on forever. Here we have one person who single-handedly brings the entire meeting to a halt and will not cease her disruptive behavior. That suggests that there was ample probable cause and justification for the arrest. So, I mean, as you say, we have to look at these things in context. And viewing all of that in context, I think your client has a problem. Your Honor, I think that if you look at previous meetings, the other commissioners do the same thing. And they constantly interrupt. The difference is viewpoint discrimination, Your Honor. When other people are allowed to continually interrupt and other commissioners continually interrupt. And they are not arrested when they... Well, do they bring the entire meeting to a halt? Do their disruptive behavior persist for the length of time of your client's disruptive behavior? I mean, as you say, we have to look at what actually transpired factually. You do, Your Honor. And I think that you have to actually look, too, that the rules or whatever the make-believe rules at any particular moment, because I think you almost have to make-believe rules. Because they don't ever actually use rules. Robert's Rules of Order, in the very simplest form, you ask for a chairman's permission before you speak. They didn't even do that at these meetings. And so when you allow someone who is politically... Because, Your Honor, even there's plenty of case law that even when you have limited in-place restrictions, when you have law, you cannot enforce the law different based upon viewpoints in a limited public forum. And that's exactly what this public body did. If Mauro Conte-Lomesa wants to interrupt Commissioner Frenchko repeatedly, FUTA allows it. If FUTA wants to interrupt people repeatedly for minutes at a time, we put a video in the record where an employee is talking and FUTA constantly interrupts this gentleman for 10 minutes. The same thing they accused Commissioner Frenchko of doing to the clerk, Commissioner FUTA does only a month earlier on June 10th. They engaged in the same conduct as Ms. Frenchko day in and day out. They were not gaveled for it because they're political friends as opposed to a political opponent. So if you take a time, place, manner restriction and you apply it differently against different viewpoints, then it does become a First Amendment violation. And that's exactly the conduct that occurs here. Both at the time of arrest... You might want to wind up. Your red light's been on. Sorry, Your Honor. But yes, I would ask this court to look at Nieves and Gonzalez and see that there is clear pretext for the arrest of Commissioner Frenchko, the approval of the arrest by the county sheriff, and I believe that the case should be affirmed. So you don't agree with counsel that it should be remanded on the Nieves question? I believe that it's certainly within this court's power to do it, Your Honor, but I also think that it should be affirmed. I do not believe it should be reversed. I certainly would like to put that on the rescue. I'd ask this court to not reverse it, to affirm it, and I guess if the court chooses to remand it on the Nieves question, it's certainly within the power to do so. I would agree with that. Thank you. Thank you, Your Honor. What we have here is a First Amendment retaliation claim as a matter of law against three individuals who did not have the arrest authority in that room, did not ask for the room. This is in reality what we have from this decision, which would be an extension of current Sixth Circuit law to the point where a commissioner could face civil liability for simply calling out the name of a police officer. This isn't appropriate. I would also note that this finding was done clearly by a credibility determination of the witnesses at this stage of the process. When there's clear video that there was an arrest, there was probable cause, it was supported by a decision of the clerk, certainly probable cause, and these determinations were made as a matter of law. My clients don't have the opportunity to face a jury and tell what happened that day, what their perspective was. Sergeant Wicks, Sergeant Ross, same thing. They've been determined as a matter of law. This case should go to trial. I think that there are two options for this court. One, I think there's probable cause that this case should be determined in favor of these defendants. I think the court should be overturned. But I certainly believe in the jury trial system. I certainly believe in that. And I am surprised with the many years of practice that I've had in this particular field that there were decisions made at the level on summary judgment by weighing credibility. In order to get a decision like this, you have to believe that Sergeant Wicks and Sergeant Ross were being dishonest about their intentions in the arrest. You have to believe that these commissioners somehow communicated with those two officers to conduct the arrest. There is nothing in the record to suggest that. Absolutely nothing. It's a red herring to talk about text messages. We know who texted who. Mr. Goswitz would like to relate to this court that his clients weren't aware of preserving text messages. I think there's testimony in the case that their phones, they simply drop off after a matter of a year and they had both gotten new phones, not knowing that this would be an issue going forward. So with respect to his clients, obviously an adverse inference or rebuttal presumption would not be fair and proper were the case to go back down to the trial court for trial purposes. As Commissioner Fuda testifies, he doesn't text. Gentleman retired a few years ago. He served many years as commissioner and he will tell you that things changed substantially when Commissioner Frenchco joined the board and the meetings changed substantially as well. I would submit to the court that the reason those meetings changed was because of her behaviors. If you look at the video, that had nothing to do with what she was saying. It had to do with preventing Ms. Vivada-Klotz from reading a document. And I will also disagree with the Steve Council that it was just words. She got up. She moved out to watch with the members of the public. She approached Ms. Vivada-Klotz. She attempted to intimidate her and it's on the video. That's not speech and it's not First Amendment. It's something that they had every right to arrest her for that probable cause was appropriate. So I would submit to the court that yes, the proper decision here would be to overturn the trial court and fire in favor of defendants based on the clear law and the clear evidence before this court. But I would certainly also indicate to this court that I personally would have no problem trying this case to a jury. All right. Thank you very much. Thank you, Your Honor. Case is submitted.